THOMSON *vs.* THOMSON.

*In the matter of the Estate of* JAMES THOMSON, *deceased.*

THE Surrogate of his own motion, can enforce the return of an inventory, after three months from the time of issuing letters testamentary, or of administration, and the rendering of an account after the expiration of eighteen months from the same date. It is not usual, however, to require the exhibition of an inventory or account, unless at the intervention of a party in interest.

The mere appearance of an interest is ordinarily sufficient to justify the order, and if the allegations are properly verified, although the executor or administrator contests the claim, the Surrogate will require the inventory or account, without entertaining the issue.

If the claimant in his petition also prays for payment of his demand, so that the Court has jurisdiction to try its validity; and an answer is interposed denying the claim, it is competent and proper to require it to be supported by proof before giving any portion of the relief sought.

When the petition for an inventory or account also seeks for payment, if the statute of limitations be pleadable to the demand itself, it is a good answer to the prayer for an inventory or account.

Where there has been a great lapse of time between the death of the testator or intestate, and the citation calling for the inventory, this of itself is sufficient to justify a refusal by the Court to enforce its exhibition.

An application for an inventory or account thirty years after the issuing of letters,—denied on the presumption that the estate has been properly administered.

In the Ecclesiastical Courts an inventory cannot be *falsified ;* and although allegations pleading *omissa* are entertained, yet if the allegations are denied in the answer, evidence will not be received against the answer. If the answer confesses more assets, the inventory may be amended.

Under the provisions of the Revised Statutes, no mode is provided for impeaching an inventory.

The administrator of a surviving partner stands in the same position as the surviving partner in his lifetime, and although he has the legal title to the partnership effects, yet they are assets of the firm and not of his intestate, and should neither be inventoried nor accounted for as property of his intestate.

It is only the interest of a deceased partner in the surplus after the payment

of the partnership debts, which is assets in the hands of his administrator. It is not usual, therefore, to make a specific inventory of copartnership assets, but it is deemed sufficient to note the interest of the deceased in the partnership, generally, upon the inventory.

J. W. GERARD, *for Petitioner.*
J. L. MASON, *for Respondent.*

THE SURROGATE. In the year 1818, James and Alexander Thomson were partners in business.

Alexander Thomson having died, his widow Eliza, and his brother David, administered on his estate, March 25, 1818. David died November, 1848, and Eliza Thomson now remains the sole administratrix.

James Thomson, the surviving partner of the firm of James and Alexander Thomson, died July 12, 1818. His widow Sarah administered on his estate.

Eliza Thomson, administratrix of Alexander Thomson, deceased, now presents her petition, alleging she has a claim against Sarah, the administratrix of James Thomson, the exact amount of which she cannot state, but believes that it exceeds $5000 ; that no inventory has been filed or account rendered of the estate ; that assets of the firm of James and Alexander Thomson, were collected by James as surviving partner, and by his administratrix, to the amount of several thousand dollars, out of which she is entitled to receive several thousand dollars ; that assets of said firm have been received by the administratrix of James Thomson, and debts of the firm paid by her within ten years ; and the petition accordingly prays for an inventory and account, and payment of the claim of the petitioner.

The administratrix of James Thomson states in her answer, that she filed an inventory, April 5, 1819 ; that David Thomson, administrator of Alexander, settled the affairs of James and Alexander more than twenty-seven years since ; that the entire assets of James and Alexander were insufficient to pay the firm debts, and there still

4

remains an outstanding bond of $2500; that she has not within ten years received any assets of the firm except thirty dollars, which she has applied on that bond; that David Thomson in his lifetime was the acting administrator of Alexander, and as such came to a settlement with the respondent, of all accounts between the two estates, in October, 1821, and on that accounting a balance being found due by the respondent, she paid the same.

The petitioner in her reply denies that the inventory rendered was full and sufficient, and alleges concealment and fraud in making the same, and also in the accounting and settlement set up in the answer. She denies that the assets of the firm were insufficient to pay the debts, or that the bond mentioned in the answer is due; and presents new allegations of misapplication of assets, of assets uncollected, and also moneys received after the alleged settlement.

The petition asks for three things: 1. An inventory; 2. An account: 3. The payment of a demand; and as the power of the Surrogate over these subjects of his jurisdiction depends upon sections of the statute entirely separate from, and independent of each other, it is important to keep this distinction clearly in view. By *Section* 18, 2 *R. S.*, 3*d ed. p.* 149, the Surrogate of his own motion can enforce the return of an inventory, after three months from the date of letters. By *Section* 55, 2 *R. S.*, *p.* 155, an executor or administrator after the expiration of eighteen months from the time of his appointment, may be required to render his account on the application of some person having a demand, as creditor, legatee, or next of kin, or without such application. And by *Section* 19, 2 *R. S.*, *p.* 178, the Surrogate has power to decree the payment of debts, legacies, and distributive shares, on the application of the claimants.

The only important difference between these provisions and those of the English statutes, consists in the power given to the Surrogate to decree the payment of a debt,

which in England is not within the cognizance of the Ecclesiastical Courts. In both countries, an executor or administrator may be required to render an inventory and account, either on the application of a creditor, or on the motion of the Court. (1 *Jac.* 2 *c.* 17, § 6; 22 *and* 23, *Car.* 2 *c.* 10, § 3; 21 *Henry VIII., c.* 5, § 4.) But while in the English Courts when an inventory and account have been duly rendered, the matter is at an end, and the creditor must seek the aid of another tribunal for the collection of his demand; with us, on the other hand, the Surrogate may, after an inventory and account have been filed, proceed to decree the payment of a debt in a proper case. This, however, can only be done where the petition prays for payment, but when the prayer is simply for an account, on the filing of the account properly verified with vouchers, and after the examination of the executor or administrator on oath, the proceeding is thereupon terminated, and the Surrogate cannot proceed to settle the account. (*Westervelt* vs. *Gregg*, 1 *Barbour's Ch. R.*, 469.)

The application for an inventory and account involves principles entirely distinct from those connected with a proceeding which seeks for payment of a debt, and I shall therefore consider the case so far as an inventory and account are sought, separately from that portion of the prayer of the petition which asks for payment of the alleged debt.

I have no doubt, from a consideration of the language of our statute, which enables the Surrogate to require an inventory and account of his own motion, that a mere appearance of an interest is sufficient to authorize an order. And where the executor or administrator contests the claim of the applicant, still if the petition be properly verified, the Surrogate will require the inventory and account without trying the issue between the parties. Such seems to have been the course of the English Courts in similar cases. In *Gale* vs. *Luttrell*, 2 *Addams' R.*, 234, the Court say " an inventory is due from an executor or admin-

istrator almost as a matter of course, at the prayer of any person having the appearance of an interest, though in modern practice inventories are not *required* to be exhibited without being so called for." And it was accordingly held that a claim on a bond which had been put in suit, and the validity of which the executor contested, was a sufficient apparent interest to entitle the applicant to call for an inventory. (*Williams on Executors*, 837.)

It is to be remembered, however, that though the appearance of an interest may be sufficient to authorize the Surrogate to require an inventory and account, still it is within his discretion in a proper case to refrain exercising this power. (*Millington* vs. *Sorsby*, 1 *Lee*, 525.) And though the Court here will not, and in England cannot, try the validity of a debt, if a creditor swears to a certain sum due to him, (*Smith* vs. *Pryce*, 1 *Lee's Cases*, 569,) and only demands an inventory and account; yet if the creditor also seeks for payment, it is competent and even proper, where an answer is interposed denying the claim, to require evidence of it before giving any portion of the relief asked. (*Gratacap* vs. *Phyfe*, 1 *Barbour's Ch. R.*, 489.) The English Courts refuse to try the validity of claims where an inventory and account are required, because they have no jurisdiction; they cannot take cognizance, therefore, of any defence, such as the statute of limitations, which is properly pleadable only in an action at Common Law for the debt. (*Philipson* vs. *Harvey*, 2 *Lee's Cases*, 344; *Kenny* vs. *Jackson*, 1 *Haggard*, 106.) And consequently an inventory and account may be directed on the application of a creditor whose debt is barred by the statute of limitations. (1 *Lord Raymond*, 232.)

But the Surrogate has a more ample jurisdiction. He can decree payment of the debt, and entertain and try any plea to its validity, and where a party has thought fit to join in his application for an inventory and an account, a prayer for the payment of his claim, any plea which will

bar the claim, may with great propriety be interposed against any relief. I have no doubt, therefore, that in such a case the Surrogate may entertain a plea of the statute of limitations.

But even in England, where the Ecclesiastical Courts, from not having cognizance of the debt, have refused to take notice of the statute of limitations, they have not hesitated to recognize the propriety of placing some limit upon the exercise of the power to call for an inventory and account. Where there has been a great lapse of time between the death of the party and the citation calling for the inventory, the Court has frequently refused to enforce its exhibition. (*Burgess* vs. *Marriott*, 3 *Curteis*, 426.) The several periods of 45, 35, 24, 18, and 17 years, have been held sufficient in connection with other circumstances to justify a denial of interference by the Court. (*Williams on Executors*, 839.) In *Pitt* vs. *Woodham*, 1 *Haggard's R.*, 248, the Court say " this demand is made twenty-four years after the death of the intestate, &c. Now to justify the party in making this application, and still more to justify the Court in acceding to it, very strong reasons must be adduced, for the presumption that the intestate's estate has been duly administered is very strong." "It would be exposing parties to very harassing demands, if they were called upon for an inventory and account after so long an interval, as they cannot be expected to keep very regular vouchers." In *Scurrah* vs. *Scurrah*, 2 *Curteis' R.*, 920, a petition for an inventory and account after a lapse of eighteen years was dismissed, with costs ; the Court holding, that though lapse of time was no bar, yet a discretion existed under the circumstances of the case. In *Higgins* vs. *Higgins*, 4 *Haggard*, 242, it is said " the Court cannot interfere in this matter. The testator died in 1815, and now after an interval of seventeen years, an inventory and account have been called for; and I am of opinion the demand has been sufficiently complied with, for although this lapse of time is not an absolute bar to a

disclosure of the deceased's assets, yet after a delay of so many years, a full and particular inventory and account cannot be expected or required, and therefore a declaration has been substituted and produced."

Now in the present case, I find that more than thirty years have passed since letters were issued to the respondent, and that fact alone is sufficient to establish a very strong presumption that the estate has been properly administered. If the party in interest has been contented to let the estate rest for more than a quarter of a century, it is not very unreasonable to suppose that she has been satisfied with what she supposed to be the course of administration. The whole policy of the law is against the enforcement of stale demands, when, from the mere fact of acquiescence, the party responsible for the discharge of a trust may have been led into a less careful preservation of vouchers and accounts, than would otherwise have been the case, had the duty of accounting been insisted upon at an earlier period.

Though the administratrix of James Thomson alleges that in fact no inventory was filed in this office, April 5, 1819; on examining the files the inventory is produced, and from its inspection the singular circumstance appears, that David Thomson, the co-administrator, with the petitioner, of the estate of Alexander Thomson, was one of the sworn appraisers in making that inventory. The petitioner, however, now undertakes to impeach this inventory, on the allegation that it did not contain a full and fair statement of the assets of James Thomson, deceased. This raises another question of some interest.

There is, to say the least, very great doubt whether even the Ecclesiastical Courts in England can entertain objections to an inventory. In *Telford* vs. *Morison*, 2 *Addams' R.*, 319, it is stated to have been the practice, to permit exceptions to be taken to inventories, time out of mind, and that entries of such proceedings exist from the year 1636 to 1812; and the Court held that the Spiritual

Courts have cognizance of inventories independently of the statute 21 *Henry VIII.*, c. 5, § 4. On the other hand, the Court of King's Bench has in these cases prohibited the Ecclesiastical Courts from entertaining allegations against an inventory, on the ground that the Court is merely ministerial in the matter of inventories under the statute of *Henry VIII.* (*Catchside* vs. *Ovington*, 3 *Burr*, 1922; *Henderson* vs. *French*, 5 *M. & S.*, 406; *Hinton* vs. *Parker*, 8 *Mod.*, 168; *Griffiths* vs. *Anthony*, 5 *A. & E.*, 623.) In *Shackleton* vs. *Lord Barrymore*, cited in 2 *Addams*, 329, the Court, however, on receiving allegations against an inventory, pleading *omissa*, and answers being taken to the allegations, would not allow testimony to be read against the answers. (*Williams on Executors*, 842.) And the rule is accordingly established, that although objections may be made, yet evidence will not be received to *falsify* the inventory. If the answers confess more assets, the Court may order the inventory to be amended; but if further assets are not admitted, proof will not be received to contradict the answers. The distinction, which appears to be a sound one, if there is any jurisdiction in the matter, is, that for omissions admitted by, or to be inferred from the answer, an amended inventory will be required, but where no further assets are admitted, witnesses will not be heard in opposition to the answer. The reason is, the inventory is required to be under oath; the Court cannot order assets to be inserted in the inventory *without* the parties' oath, nor can it compel an executor or administrator to swear to assets, the possession of which he has twice already denied, viz., once in the inventory, and again in the answer denying the allegations. If this be the rule with the English Courts, which claim jurisdiction independently of the statute, *à fortiori*, it ought to prevail here where the matter is regulated to a minute degree by the statute, and where no mode has been provided for impeaching an inventory; though a further inventory may be required of assets subsequently discovered. The same

rule prevails in the English Courts in regard to an account.
A creditor has a right to call for an account, a *constat* of
the estate, but not to object to the particulars. He cannot
falsify the account, nor contest the payments of the execu-
tor or administrator, but with regard to him, the oath of
the party is in this respect conclusive. (2 *Addams' R.*,
330; *Brown* vs. *Atkins*, 2 *Lee's Cases*, 1; *Toller*, 495;
*Williams on Executors*, 1777.)

In the present instance, the respondent declares the
inventory to have contained a statement " of all the goods,
chattels, and credits of the said James Thomson which
had then come to her knowledge." She adds that no com-
plaint has ever been made that the inventory was incom-
plete, nor any further inventory been required; and sets
up by way of declaration, that the estate of James and
Alexander Thomson was insolvent; that the accounts of
James and Alexander were adjusted more than twenty-
seven years ago by David Thomson, the administrator of
Alexander; that the only assets received in the last ten
years is the sum of $30, which has been applied to the
outstanding debt of the firm. So far as relates to such a
formal inventory and account as I have authority to order,
under sections 18, 2 *R. S.*, *p.* 149, and § 55, 2 *R. S.*, *p.*
155, and which must be rendered under oath, I cannot
hesitate in holding the answer sufficient, as well from its
exhibition of an inventory made and filed in 1819, in the
making of which the co-administrator of Alexander Thom-
son participated, and against which allegations ought to
have been made at the time, as for the declaration it
makes in substitution of an account, in relation to the
administration of the estate, which being verified, I must
after this long lapse of time consider as justifying me in
refusing to entertain against it any allegations pleading
*omissa.* David Thomson and Eliza Thomson both admin-
istered on the estate of Alexander. It is not denied that
David was the acting administrator; he was cognizant of
the inventory made by the respondent in 1819, of James'

estate; he was one of the appraisers; the respondent states deliberately under oath, that she settled all the affairs of James and Alexander, with him, in 1821; no complaint is made for more than thirty years; David, the only person who could have been familiar with these transactions, dies in November, 1848; and three months after his decease, the petitioner who has been quiescent since 1818, now comes forward for the first time and demands an inventory and account. Under such circumstances I cannot but think, that it would be an abuse of my discretion, to hold the respondent to a more stringent exposition of her administration than she has already rendered under oath.

If I had any hesitation in arriving at this conclusion, however, it would be dissipated on a view of other facts which appear in the case. The excuse of the petitioner for coming into this Court is, that she has a claim as administratrix of Alexander Thomson, against the respondent as administratrix of James Thomson. She does not allege any precise debt, and confesses that she cannot state the exact amount, but believes it exceeds five thousand dollars. She alleges, however, that the respondent as administratrix of James, the surviving partner, has received assets of the firm of James and Alexander, out of which the petitioner claims she is entitled to receive several thousand dollars. There is no doubt, therefore, that the debt claimed is not the individual debt of James Thomson, but is in fact an alleged balance, claimed as due to the administratrix of Alexander, out of the partnership effects of James and Alexander; and it is equally plain that the assets alleged to have come into the hands of the respondent, out of which the petitioner demands "several thousand dollars," are pointed at by her as the partnership assets. There seems to be here some misapprehension, as to the rights and duties of a surviving partner, and of his personal representatives. While it is admitted, that at law the surviving partner is solely entitled to the collection of

the choses in action of the firm, there is doubt as to the precise nature of his interest in the personal property of the firm in possession at the death of his copartner. (*Story on Partnership*, 494, *Gow.*, 351.) Some writers appear to consider the surviving partner a tenant in common with the representatives of the deceased partner in the goods, while others treat him as having the whole legal title, subject to the claims of creditors, and to the equitable rights of the personal representatives of the decedent. (*Hutchinson* vs. *Smith*, 7 *Paige*, 34; *Newell* vs. *Townsend*, 6 *Simon's R.*, 419.) But however this may be, it seems that for certain purposes a sort of *quasi* partnership continues, and the surviving partner, and his personal representative, retain the right to collect the moneys and convert the property of the firm, and pay the debts. The title of the surviving partner, or of his representative, is a legal one; he alone is chargeable with the debts of the firm. But although the absolute legal title is in him, yet the partnership effects are not in any way his individual property, nor held by him for his exclusive benefit, but he is in fact a trustee in the possession of a fund for the payment of the partnership debts, and the settlement of the partnership concerns. The balance is to be distributed equally between the surviving partner, and the representatives of the deceased partner. "It is only the decedent's share of such balance which belongs to his representative as part of his estate." (*Egberts* vs. *Wood*, 3 *Paige's Ch. R.*, 525; *Wilder* vs. *Keeler*, 3 *Paige*, 172.) The administrator of the surviving partner stands in the same position, as the surviving partner in his lifetime. Though he has the legal title to the partnership assets, yet they are assets of the firm, and not of his intestate, and should neither be inventoried as property of his intestate, nor be accounted for as property of his intestate. The administrator is in fact a trustee, whose duty it is to collect the partnership property and pay the debts of the firm, and after the surplus is ascertained, and the interests of the partners therein settled,

pay the share of the partner first deceased to his personal representatives, and bring the share of the partner last deceased into the accounts of his estate. (*Smith* vs. *Jackson*, 2 *Edwards' Ch. R.*, 28 ; *Case* vs. *Abeel*, 1 *Paige's R.*, 395.) It has not been usual, therefore, to make a specific inventory of copartnership assets, in giving an account of the estate of a deceased partner, but it has always been deemed sufficient to note generally the copartnership interest, as an interest in an unascertained balance—the balance when found, being the only thing in which the administrator has any individual right of property, for the exclusive benefit of the estate of his intestate.

Till an accounting, therefore, is had before a proper tribunal, it is impossible for the Surrogate to pronounce the administratrix of a surviving partner to be in assets, in regard to any of the copartnership property : and alike impossible to award payment of a debt claimed as due on copartnership transactions, before the debt has been liquidated by a Court having jurisdiction. That accounting cannot be had here, directly or indirectly, for it is not an accounting of the administration of the estate of an intestate, but an accounting concerning the collection and distribution of partnership assets, by one who stands in the position of a trustee. I do not put this objection on the ground that I have no jurisdiction to decree payment of an equitable debt, for I suppose the destruction of all distinction between legal and equitable jurisdiction, would justify me in decreeing payment of an equitable as well as a legal debt. (*Payne* vs. *Mathews*, 6 *Paige*, 20.) But I place it on the broad doctrine, that the assets of a firm in the hands of the administrator of a surviving partner, are not assets of his intestate, that his management of the partnership affairs, is not the subject of an accounting in this Court; and that it is only after an accounting has been had, in a Court of competent jurisdiction, and a balance struck, and the shares of the partners ascertained, the administrator can either be held liable before the Surrogate for assets derived from the part-

nership, or be called upon to pay any alleged sum claimed to be due the representatives of the other deceased partner, for a debt growing out of the partnership affairs. Again, the provision of the statute which authorizes me to decree the payment of a debt, when the administrator does not ask for a final settlement of his account, is not imperative. (*Kidd* vs. *Chapman*, 2 *Barbour's C. R.*, 414.) Can there be a doubt that I ought to exercise this discretion, by refusing to settle these partnership accounts in this Court? Were I to wade through these accounts, of some thirty years standing, and find a balance, it would not be conclusive on the same parties in another Court. (*Foster* vs. *Wilber*, 1 *Paige's C. R.*, 537 ; *Fitzpatrick* vs. *Brady and others*, 6 *Hill's R.*, 581.) Nor would it be of any avail here. The inventory shows assets amounting only to $325, which I should have to presume to have been duly administered after this lapse of time ; and it is not to be concealed that the real inventory and the real account which the petitioner seeks, is the inventory and account of the partnership assets, and partnership affairs of James and Alexander Thomson, which, as I have already said, I do not think the respondent is, under any circumstances, bound to render in this Court.

In whatever light, then, the case is regarded, whether on the ground that an inventory was filed in 1819 ; that 30 years have elapsed since letters were issued to the respondent; that no certain debt is sworn to by the petitioner; that the account and inventory really sought relate to the partnership affairs, and the debt alleged can only be ascertained by an investigation of the entire partnership transactions ; I feel bound to dismiss the present application.