JAMES FORSYTH, *appellant, vs.* MARY S. BURR, adm'x &c.,
*respondent.*

Creditors of a decedent's estate have a right to require the executor or administrator to file an inventory of the estate ; and an application to the surrogate, for an order for that purpose, is rarely, if ever, refused, if made within a reasonable time.

It is no answer to an application for an order compelling the filing of an inventory, that the executor has assets to a large amount over and above all debts against the estate, and offers to deposit security sufficient to pay any debt which may be recovered against him or the estate; or that it would be troublesome and expensive to make an inventory; or to allege that the creditor, in asking for an inventory, is actuated by curiosity, and a design to abuse the process of the court.

CHARLES BURR died at Saratoga Springs, in the month of August, 1860, intestate.   On the 23d of August, 1860, letters of administration were issued to Mary S. Burr, his widow, by the surrogate of Saratoga county.   She accepted and qualified.   The appellant had an account and claim against the estate, which the respondent had knowledge of when she became administratrix, as she soon after sent her agent to get it.   On the 14th of August, 1861, about a year afterwards, the appellant presented his claim as a creditor, duly verified, to the administratrix, the respondent, who rejected it entirely.   No inventory of the estate has ever been returned or filed by the administratrix.   On the 24th of August, 1861, the time for returning an inventory having expired, and no further time having been obtained, the appellant presented his petition to the surrogate, for an inventory to be returned and filed.   And the surrogate issued a summons requiring the administratrix, the respondent, to return an inventory of the estate according to law, or show cause before him on the 7th of September, 1861, why an attachment should not issue against her.   On the 7th of September the parties appeared before the surrogate, and the matter was adjourned to the 28th of September, on which adjourned day the appellant appeared but the respondent did not appear, and an attachment was issued against the respondent and

placed in the hands of the sheriff of Saratoga county. On the 7th day of November, 1861, while the attachment was yet in the hands of the sheriff, the respondent appeared ex parte before the surrogate with affidavits, and obtained an order staying all proceedings on the attachment till the 25th of November, and that on that day the appellant show cause why the attachment should not be set aside, and enjoining and restraining the sheriff from executing the attachment. On the said 25th of November the parties appeared, and the surrogate set aside and vacated the attachment, on the ground of an irregular adjournment made by him, and further ordered that the hearing on the original order to show cause why an inventory should not be filed, be fixed for the 30th of December, 1861, upon affidavits then to be presented. On the 30th of December the parties appeared and were heard, and the matter was submitted to the surrogate, who, on the 14th of January, 1862, made and entered an order dismissing the petition for an inventory. On the final hearing, December 30, 1861, the respondent set forth in her affidavits as reasons why she should not file an inventory, that she was advised by counsel, when she was appointed administratrix, that there was no necessity of filing an inventory, there being no creditors to her knowledge or belief, nor any other person besides herself having any interest in the personal estate of the deceased; that she had assets to an amount exceeding $50,000 over and above all debts against the estate, and she offered to deposit security sufficient to pay any debt which might be recovered against her, or the said estate; that an inventory would be troublesome and expensive to make; that the appellant was actuated by curiosity, and a design to abuse the process of the court in asking for an inventory. All of which averments were denied in the affidavit of the appellant, and he insisted upon having the inventory filed, as his right, as a creditor of the estate, and as her bounden duty as the trustee and administratrix of the same. An appeal was taken from the surrogate's decision to the general term.

*J. Forsyth,* appellant, in person.

*J. W. Crane,* for the respondent.

*By the Court,* MILLER, J.   The statute requires that executors and administrators, within a reasonable time after qualifying and after giving the proper notice, shall make an inventory of the property of the deceased.   (2 *R. S.* 82, § 2.) Upon the inventory being completed a copy of it must be returned to the surrogate, within three months after the date of the letters issued by him.   (*Id.* 84, § 15.)   The inventory must be verified by the oath of the executor or administrator. (*Id.* 84, 85, § 16.)   If the executor or administrator neglect or refuse to return such inventory within the time required by law, the surrogate is authorized to issue a summons requiring the executor or administrator to appear before him and return an inventory according to law, or show cause why an attachment should not be issued against him.   (*Id.* 85, § 17.)   If after the personal service of such summons such executor or administrator shall not by the day appointed return such inventory on oath, or obtain further time to do so, the surrogate shall issue an attachment against him, and commit the executor or administrator to the common jail of the county, there to remain until he shall return such inventory.   (*Id.* § 18.)   Any person interested in the personal property of the deceased may compel the executor or administrator to return an inventory.   (*Dayton's Surrogate,* 3d ed. 281, 282., *Thomson* v. *Thomson,* 1 *Brad.* 24, 27, 28.) The executor or administrator may appear on the return day and show cause against the order, and contest the petitioner's allegation of interest, and if he show that the petitioner has no interest, or that the demand of an inventory be vexatious, the petition will be dismissed.   (*Dayton's Surrogate,* 281, 2.) But when the executor or administrator contests the claim, the surrogate, if the petition be properly verified, will require the inventory and account without trying the issues between

the parties. (1 *Brad.* 27, 28. *Williams on Ex'rs*, 837.) I do not think that there was in this case sufficient cause shown for the neglect of the administratrix. Although the claim was disputed, yet there was not evidence to prove it was entirely invalid, and that the demand was vexatious. The cases cited by the respondent do not sustain the doctrine contended for. In *Boon's case*, (*Sir T. Raym.* 470,) the plaintiff had paid two installments of the legacy and tendered the third ; thus rendering the application entirely unnecessary and vexatious. In *Leighton* v. *Leighton* (2 *Cas. Temp. Lee*, 356) the decision was put upon the ground that there were no effects to inventory, and it would be a useless expense. In *Fleet* v. *Holmes* (*Id.* 101) the legacy was one thousand pounds, and the executrix had tendered one thousand pounds principal and sixty pounds for interest. Sir George Lee, in delivering the opinion of the court, says : " I refused to decree an inventory because I thought it useless, because the executrix would certainly be bound by her confession of assets and of having made interest, in her answer to the libel for this legacy, and therefore Fleet was already sufficiently founded to have the judgment of the court whether she ought to pay interest or not." The executrix was here ready and willing to pay, and had tendered all but some interest, and there was no question as to responsibility raised. It will be seen that neither of the cases was like the one now considered. In two of them the executrix had tendered and was ready to pay. In one, there were no assets. In neither was the principal debt disputed. It was no answer to the application that the administratrix offered to deposit the money. She did not actually deposit it, and I do not understand that the applicant was bound to enter into negotiations with her for that purpose. The averment of ability to pay is not a sufficient answer to the application. And in the cases cited it appeared that there was not only ability but willingness to pay. I think no sufficient cause was shown for neglect to file the inventory. The applicant, as a creditor, had a right

to require it. As a general rule, if a creditor swears positively to a debt due to him from the decedent, he will be entitled to an order for an inventory and an account of the estate. And the surrogate will not proceed to try the validity of the debt, or to inquire as to the amount thereof upon a mere application for an inventory. (*Smith* v. *Pryce*, 1 *Lee's Ecc. Rep.* 525.) The allegation that the application is vexatious and to gratify the curiosity of the petitioner is denied, and cannot be available when there is a claim made in good faith, even though the demand is disputed. An application to compel an executor or administrator to file an inventory, by a party in interest, is rarely if ever refused, if made within a reasonable time. And in this case I see no good reason for the decision of the surrogate. The party interested had a right by statute to know the condition of the decedent's property, and the surrogate erred in refusing to order the inventory to be filed.

The order should be reversed, with costs to be paid by the estate.

[ALBANY GENERAL TERM, May 5, 1862. *Hogeboom, Peckham* and *Miller*, Justices.]