dence here, as already said, would have justified a finding that there was such unbroken connection between the disease, which caused the death of the intestate, and the injury to his rib, and therefore the court erred in dismissing the complaint, for which reason there must be a new trial.

The judgment appealed from, therefore, must be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.

---

(110 App. Div. 857.)

## In re TISDALE.

(Supreme Court, Appellate Division, Third Department. January 8, 1906.)

1. EXECUTORS AND ADMINISTRATORS—INTERMEDIATE ACCOUNTINGS—RIGHT TO. PETITION.

A widow of testator, who is given a life estate in her husband's property in lieu of dower, is entitled to petition for an intermediate accounting by the executor, under Code Civ. Proc. § 2725, subd. 3, authorizing the surrogate to require an executor to render an intermediate account on the petition of a person entitled to a legacy or pecuniary provision.

2. WILLS—LEGACIES—CONDITIONS.

Provisions of a will giving testator's widow a life estate in testator's property, subject to the maintenance of two persons named in the will and the education of one of them, in lieu of dower and statutory rights, do not impose conditions precedent to the payment of the bequest to her; but such bequest is made subject to the performance of the conditions imposed after it has been received by her.

3. EXECUTORS AND ADMINISTRATORS—INTERMEDIATE ACCOUNTINGS—PETITIONS— REQUISITES.

Code Civ. Proc. § 2725, authorizes the surrogate to require an executor to render an intermediate account on petition of a person entitled to a legacy or pecuniary provision out of testator's estate. Real Property Law, Laws 1896, p. 586, c. 547, § 181, provides that a widow is deemed to have elected to take a pecuniary provision under the will, unless within one year after the death of her husband she enters upon the lands assigned to her for dower or commences an action for dower. A widow was bequeathed the use of the residue of her husband's estate, subject to the maintenance and education of certain persons, and in lieu of dower. About seven years after the probate of the will, she petitioned for an order requiring the executor to render an intermediate account. Prior to the commencement of the proceedings, testator's lands had been sold by the executor under a power of sale, and the widow had received considerable sums of money from the executor under the will. *Held*, that the failure of the widow to allege and prove the performance of the conditions mentioned in the will, and an election by her to take under the will in lieu of dower, would not, under the circumstances, defeat an accounting on her petition.

4. APPEAL—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

On the issue of a widow's election to take under her husband's will in lieu of dower, the exclusion from evidence of a deed executed by the widow, conveying her interest in certain real property to which she was not entitled under the will, was not reversible error, where the deed bore a date of over several years subsequent to the expiration of the year allowed by Real Property Law, Laws 1896, p. 586, c. 547, § 181, for a widow to take against the will, and was a deed given apparently to confirm a title deraigned through foreclosure sale.

5. EXECUTORS AND ADMINISTRATORS—MANAGEMENT OF ESTATE—IMPROVEMEN'I'
OF REAL PROPERTY.

Where an executor was made a residuary legatee after the payment of
all legacies and the death of testator's widow, and was given a power to
sell the real estate, but no authority to continue a mill business in which
testator was interested, he had no right to expend money of the estate
in permanent improvements on the mill, and was properly charged in his
accounting with the amount of those expenditures.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and
Administrators, §§ 407, 408, 437.]

6. SAME—ACCOUNTING—OBJECTIONS—ESTOPPEL TO ASSERT.

Evidence that testator's widow talked with the executor about the ad-
visability of making certain repairs on property of the estate did not
preclude the widow from questioning the validity of expenditures for
such repairs, if they were in fact unlawful.

7. SAME—CREDITS—MORTGAGES.

An executor is not entitled to a credit for a balance due upon a mort-
gage given by testator, in the absence of evidence that he has paid the
sum due as an obligation of the estate.

8. SAME—CHARGES—INVENTORIED ASSETS.

Where the same person was both temporary administrator and executor,
and as executor filed an inventory of testator's entire personal estate in
which he listed the assets of a mill business at a less figure than the
amount at which he listed them in the account filed by him as temporary
administrator, he should have been charged only with the amount stated
in his executorial inventory, in the absence of an affirmative showing by
the objector that such amount was incorrect and that other assets should
have been included.

Appeal from Surrogate's Court, Cortland County.

In the matter of the accounting of Wayland D. Tisdale, as executor
of the last will of James A. Tisdale, deceased. From a decree stating
the account, the executor appeals. Modified.

This proceeding was commenced upon the petition of Sarah A. Tisdale,
the widow of James A. Tisdale, to compel the executor of his will to render
an account and to pay over to her the accumulated income of the estate.
After the payment of certain legacies the widow was given under the will
the use for life of the remainder of her husband's estate, subject to the main-
tenance of two persons named in the will and the education of one of them,
which provision was also given to her in lieu of dower and statutory rights
in his estate. The appellant was the cousin of the testator and was named
in the will as the executor thereof. After the payment of the legacies and
after the death of the wife the rest, residue, and remainder of the estate was
given to the appellant absolutely. A power to sell and convey all the testa-
tor's real estate was given by the will to the executor as soon as he could
get the fair market value thereof. The testator died on the 4th day of April,
1894. His will was admitted to probate on the 25th day of June thereafter.
He left, with other real estate, a gristmill which was operated at the time
of his death by him in partnership with one T. L. Corwin, under the firm
name of James A. Tisdale & Co. The surrogate, on it appearing that there
would be a delay of several weeks in proving the will, that the partnership
between Tisdale and Corwin expired on the 24th day of April, 1894, and
that there was no person authorized to take charge of the mill property and
keep the same from waste, appointed the appellant as temporary adminis-
trator of the estate for the purpose of taking charge of the said mill prop-
erty and conducting the business therein during the time prior to the appoint-
ment of an executor under the will. The appellant as such temporary ad-
ministrator filed an inventory of the mill assets showing their amount to
be $5,606.72. After the will was admitted to probate the appellant took pos-
session of the estate as executor and filed an inventory of the personal
property showing the total valuation thereof to be $21,766.09. This inventory

contained an item showing the interest of the estate in the copartnership of J. A. Tisdale & Co., to be $5,222.76. The appellant operated the mill until January 1, 1899. During such time he bought new machinery and made extensive repairs. From the 1st day of January, 1899, to the 1st day of July, 1901, he leased the mill property at a rental of $50 per month. Upon the return of the citation to the executor to show cause why he should not be required to render an account of his proceedings as executor he appeared and on the 9th day of July, 1901, filed his accounts in which he admitted that he had received assets of the estate amounting to $28,209.39, and in which he credited himself with $28,721.49, showing the estate to be in debt to him in the sum of $512.10 without taking into account any commissions to which he might be entitled. Every item thereof was objected to by the petitioner. The issues raised by such objections were referred to a referee. The referee thereafter made his report, and upon a motion to confirm the same before the surrogate, by consent of the parties, further evidence was taken to be considered by the surrogate in aid of the report of the referee. The surrogate made a decree which modified, and, as modified, confirmed, the report of the referee. By the decree it was adjudged that the executor should be charged with the sum of $28,593.35 and credited with the sum of $23,784.45, leaving in the hands of the appellant belonging to the estate the sum of $4,808.90, upon which amount he was charged interest from July 1, 1901. From the decree so made this appeal is taken.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and KELLOGG, JJ.

Irving H. Palmer, for appellant.
Thomas H. Dowd, for respondent.

CHESTER, J. Section 2725 of the Code of Civil Procedure contains ample power to the surrogate to require the executor to render an intermediate account. The widow was given a pecuniary provision under the will, and she was therefore entitled under subdivision 3 of that section to petition the surrogate for an accounting and for a decree directing payment of any amount found due to her. Such was the form of her petition. Much of the appellant's argument is upon the contention that the petitioner is entitled to no relief beyond an accounting, in the absence of allegations in her petition and proof of the performance by her of the conditions contained in the testator's will, and that she had elected to accept the provisions of the will in lieu of dower. We cannot see the force of this contention, in view of the fact that the surrogate has not assumed in the decree appealed from to adjudicate upon the widow's rights under the will or to decree any relief to her beyond the stating of the account and the determination of the amount of the assets belonging to the estate in the hands of the executor and charging him with the interest thereon.

The conditions with respect to the maintenance of the persons mentioned in the will and the education of one of them were not conditions precedent to the payment of the bequest to her; but the bequest was given to her subject to the performance of the conditions when she had received under the provisions of the will the moneys of the estate which would enable her to perform. There is also enough in the record to show that the widow has elected to accept the pecuniary provisions made for her by the will in lieu of her dower and statutory rights. She alleges in her petition that she is a legatee under the will, and that the executor has paid her certain moneys which she claims are much less in amount than the income from the estate to which she is entitled.

His account shows the payment of considerable sums of money to her. These payments could not properly have been made by him to her in the absence of such election. Still further, the petition was made nearly seven years after the probate of the will and under section 14, tit. 3, c. 1, pt. 2 of the Revised Statutes (1 Rev. St. [1st Ed.] p. 742, as amended by Laws 1890, p. 202, c. 61, and by Laws 1895, p. 956, c. 1022), and revised in section 181 of the real property law (Laws 1896, p. 586, c. 547) she is deemed to have elected to take the pecuniary provision under the will, unless within one year after the death of her husband she enters upon the lands assigned to her for her dower or commences an action for her dower. It also appears that all the lands of the testator had been sold by the executor under the power of sale contained in the will, except such as had been sold under the foreclosure of mortgages given by the testator in his lifetime. The failure of the petitioner to allege and prove the performance of the conditions mentioned and her election to take the provisions of the will in lieu of dower should not, therefore, under the circumstances shown, serve to defeat an accounting on her petition.

Upon the hearing before the surrogate a deed executed by the petitioner to one Millard Perkins conveying her interest in the mill and residence property was excluded, and the appellant insists that this was error requiring a reversal; the claim being that this record was in effect an admission that she had a dower interest in the property, a fact inconsistent with the petitioner's right to maintain the proceeding. The deed was one bearing date the 14th day of October, 1903, over eight years after the expiration of the time fixed by the statute above mentioned within which she was to make her election, and was one given to Perkins, to whom Glen A. Tisdale, the son of the executor, had conveyed the property after the latter had purchased it in mortgage foreclosure proceedings under the second mortgage thereon nearly a year before the widow signed the deed. The deed of the widow at most was an admission which it clearly appears was contrary to the fact claimed to be admitted thereby, and dated as it was long after the commencement of this proceeding was apparently given merely to confirm the title to the purchaser thereof. Under such circumstances its exclusion from evidence was not reversible error.

The appellant also complains that the surrogate erred in disallowing something over $3,000 expended by the executor for new machinery and for repairs upon the mill. The executor's excuse for this expenditure is that the mill was worn out and could not be operated at a profit without installing new machinery. Even though he may have acted in entire good faith in this expenditure, the surrogate was clearly right in disallowing to him the moneys so expended. The executor was charged with no duty under the will with respect to the mill; nor was he authorized by the will to continue the business. He was simply given a naked power to sell the real estate as soon as he could get the fair market value thereof. He has been allowed for the repairs of a temporary nature. Those disallowed were for permanent improvements. The estate, however, has received no substantial benefit from these improvements. The mill and residence property were regarded by the executor as worth from $14,000 to $15,000 before the making of these repairs. It was mortgaged by the testator

in his lifetime, and after the repairs and permanent improvements were made and the new machinery added the property was sold under the foreclosure of the second mortgage thereon, and was purchased upon such sale for the son of the executor for $100, subject to the first mortgage of $4,245.81, leaving a deficiency upon such second mortgage of $2,353.53. The executor had no right under the law to expend the moneys of the estate in permanent improvements on the mill, and he was, therefore, properly charged with these expenditures. The evidence is insufficient to show that the petitioner acquiesced in the unauthorized expenditure of the moneys of the estate for these permanent improvements. The only proof is that the appellant says he talked with her "about the advisability of making the repairs." It does not appear what he said to her in that respect or what reply she made. Such indefinite testimony alone cannot properly be held to conclude her from questioning the validity of the unlawful expenditures.

It is also insisted on behalf of the appellant that he should be allowed for the balance due upon the mortgage given by the testator to the First National Bank of Homer, which is the mortgage above mentioned as having been assigned to the son and under which the deficiency above mentioned arose. If there remains any balance due and unpaid upon the mortgage, as the appellant claims, he is nevertheless not entitled to have the amount thereof allowed to him until he furnishes evidence that he has paid the same as an obligation of the estate, and I am unable to find any such evidence in this record.

In one respect we think the learned surrogate has fallen into error. He charged the executor with the sum of $383.96, which was the difference between the amount of mill assets as inventoried by the temporary administrator, $5,606.72, and the amount included in the account and in the subsequent inventory filed by the executor as the interest of the testator in the copartnership of J. A. Tisdale & Co., $5,222.76. The last item was apparently taken from the personal account of the testator on the books of his firm, as the credit items thereof amount to exactly that sum. But no mention seems to have been made of the credit items of the personal account amounting to $1,081.06, or to strike a balance between the debtor items and the credit items of such account in order to arrive at the testator's interest in the firm. But, whatever there may be of these matters, the inventory filed by the executor was later in point of time to the inventory filed by him as temporary administrator, and the one last filed purported to be of the testator's entire personal estate, including the mill assets. The amount of that inventory is the amount he was properly chargeable with in the first instance, and until it has been shown that the amount thereof is incorrect he is not to be charged with a greater amount on that account. The burden of showing that was on the petitioner as contestant (Matter of Stevenson, 86 Hun, 325, 33 N. Y. Supp. 493), and she has not made it clear that there were assets other than those accounted for that should have been included in the accounts. In no other respect do we discover any error prejudicial to the appellant.

The decree should be modified, by deducting the sum of $383.96 from the amount charged to the executor therein, and, as so modified, affirmed, with costs to the appellant payable out of the estate. All concur.