In the Matter of the Estate of ABRAHAM L. ERLANGER, Deceased.

Surrogate's Court, New York County, March 23, 1936.

*John R. Lazenby*, for Julius Klein, one of the administrators with the will annexed of above estate.

*I. Gainsburg*, for Leonard E. Bergman, coadministrator with Julius Klein, etc.

*Bernard Hershkopf*, for Saul J. Baron.

*William Klein*, for Lee Shubert.

*Terence J. McManus,* for Adelaide Louise Erlanger.

*Chadbourne, Stanchfield & Levy,* for Mitchell H. Mark Holding Corporation.

*Mudge, Stern, Williams & Tucker,* for the Chase National Bank, as trustee, and for itself.

DELEHANTY, S.  One of the administrators c. t. a. applies for the appointment of two appraisers to value all the personal property of the deceased as of the date of the administrators' appointment. He asks additionally that certain shares of stock owned by the estate be appraised as of the date of death of deceased, March 7, 1930.  In respect of the latter portion of the application petitioner says that he believes " that it will be for the best interests of the estate " that such valuation be made.  In support of his application petitioner furnishes the affidavit of his attorney which refers to the proceedings heretofore had in a contested accounting by the temporary administrator.  From this affidavit it is quite apparent that the desire for an appraisal as of March 7, 1930, has its roots in the accounting proceedings and in the desire of counsel, who is acting therein for a creditor, to have the advantage of the appraisal in connection with such accounting proceedings.

The application requires some consideration of sections 195 to 199 of Surrogate's Court Act dealing with the appointment of appraisers and the making of an inventory.  These sections disclose that the inventory is intended to serve both as an information source and as a starting point in future proceedings in the administration of an estate.  It has as its object in part the fixation of the value with which presumptively the fiduciary is to be charged. It is designed as well to require the fiduciary to certify the property in his hands and the claims of the deceased against him.  The sections are to be construed reasonably.  The fiduciary is to report all property of which he has knowledge.  (*Matter of Butler,* 38 N. Y. 397.)  The law contemplates an appraisal in the presence of the parties interested or on notice to them.  Tangible personal property is to be valued upon inspection by a person duly qualified. Intangibles are commented on in section 197, and, therefore, the shares of stock concerning which appraisal is sought are a type of property which may be appraised and which must be included in an inventory.  There is provision for appraisal of property found in " different or distant places " and in such circumstances there is authority to the appraisers to " adjourn the appraisal " to such distant place or in the alternative the surrogate may appoint other and local appraisers.

In the case of a stock certificate which is physically present within the jurisdiction of the court appointing the appraisers there seems no express authority for any change of place of the inventory or for the appointment of appraisers local to the place where the tangible personal or the real property of the corporation is located. Counsel heard on this application all agreed that the properties owned by the corporations whose shares are to be appraised are widely scattered throughout the United States. An appraisal of these shares requires a comprehensive knowledge of the corporate resources and liabilities. No single asset value constitutes any more than one item in an aggregation of credits and debits. The valuation of all assets and the setting off of all liabilities of the corporation would suffice to give an apparent value to the corporate stock only on the assumption that all assets were turned into cash and all liabilities immediately paid. Even when these asset values are ascertained consideration must be given to the possibility of liquidation of them, to the course of the trade or business in which the enterprise is engaged and generally to the factors of current earnings, business trends, capital needs, prospective profits, tax liabilities, good will and other items which truly establish stock values. In the case of shares of a corporation there is involved much more than the simple appraisal of its tangible assets. Study is required by one familiar with business conditions in the particular industry and sufficiently skilled to make a comprehensive survey of values in the light of such conditions and the particular situation of the corporation whose shares are to be appraised.

The appraisal and inventory when made, verified and filed as prescribed by statute becomes *prima facie* proof of the extent and value of the personal property left by the deceased and hence of the property for which the fiduciary is responsible in his account. (*Matter of Rogers*, 153 N. Y. 316, 328; *Matter of Mullon*, 145 id. 98, 104; *Forbes* v. *Halsey*, 26 id. 53, 60.) It is apparent that since the true purpose to be served by the appraisal and inventory is the establishment *prima facie* of the quantum of personal property chargeable to the fiduciary and of the value of that property when received by him, there is no interest on the part of petitioner to establish the value of even the same property in the hands of his predecessor. This point has been expressly passed upon. (*Matter of Tisdale*, 110 App. Div. 857, 863.) It follows that so much of the application here made as relates to the value of the shares of stock as of May, 1930, should be and it is denied.

As respects value on January 27, 1936, petitioner is entitled to have the relief requested unless all parties in interest can agree

upon a substitute for the appraisal which will define *prima facie* the liability of the petitioning administrator both in respect of the property actually received by him and of its value when received by him. Since the major asset of the estate seems to be the shares of stock of the two companies referred to in the moving papers it may be possible for the parties in interest to avoid what seems to be prospectively a large expense by entering into a stipulation that any value which petitioner himself may ascribe to the shares as of January 27, 1936, will be deemed *prima facie* the value in any proceeding affecting him. If there is no lack of information as to assets it should be a very simple matter for the parties to agree upon what the assets are which came into the hands of the administrators c. t. a. Since two accounts have been filed by the temporary administrator and since no suggestion has been made to the court that other assets have been found, there seems no likelihood that the quantum of property is in doubt. It can be listed very readily and a stipulation made with the administrator c. t. a. that *prima facie* he will be chargeable only with the property so listed. As to value the parties interested may endeavor to agree with the administrators c. t. a. upon a tentative value which is to be regarded *prima facie* as the maximum with which the administrator c. t. a. will be chargeable. Indeed the other parties in interest may be willing to stipulate that the shares be reported by the administrator c. t. a. as having no value above the debt to which they are collateral and that an appraisal thereof be waived. Thus by co-operation among the parties in interest an unnecessary expense may be avoided.

As stated the inventory is only *prima facie* proof of value. It may not be attacked directly. Any issues arising in respect of it must be raised in the accounting proceeding. The court will not try separately the issue whether the inventory is correct and the values there stated too low. In the archaic language of the old cases " evidence will not be received to *falsify* the inventory." The court cannot make a fiduciary certify and swear to a value other than that which the fiduciary determines is proper. All questions about values are determined on the account where the inventory values serve only as a starting point. (*Thompson* v. *Thompson*, 1 Bradf. 24, 31.)

Despite the directory language of the sections referred to there is no absolute compulsion upon the court to do a futile or a wasteful thing. If good cause be shown to the contrary, the court in the exercise of discretion may decline to order an inventory. (*Matter of Robbins*, 4 Redf. 144; *Matter of Wagner*, 119 N. Y. 28.) Here the property consists of shares of stock in a corporation which is wholly within the control of the administrators c. t. a. Whatever the

corporation has of property will neither be varied nor protected nor conserved by an appraisal. Whatever there is of opportunity to realize money upon the shares can be lost only by the affirmative acts of the administrators themselves or of those whom they put in charge of the assets. Of course business conditions may destroy the value in the shares if they have any. The administrators are continuing the business with the knowledge and approval of all parties interested in the estate. One administrator was nominated by creditor interests, the other by legatee interests. They control the corporations. Between them they will no doubt conserve every bit of value that there is in the shares as well as in other assets of the estate. If the reasonable demands of the administrators for protection against undue assertions of present value in the shares or in other assets be furnished them then there will be presented a situation in which the court in the exercise of discretion should decline to direct an appraisal and inventory. The court is reluctant to impose upon this already burdened estate the further burden of an expenditure which may run into substantial figures. The opposition by one of the creditors to such expense causes the court to hesitate in authorizing the expense even though both administrators have joined in this part of the application.

In any event no roving commission will be granted to any appraisers appointed by the court. They will be required to study the data available in this city from the corporate records and such other sources as are available and will be limited to an opinion based upon such data. In so far as rights in plays and other like assets are concerned they can be valued here as well as elsewhere. In so far as leasehold and other property rights are concerned they must be valued on the basis of such data as may be accumulated here. No appraiser appointed here would be competent to give an opinion about real property located in widely separated areas of this country unless first he had gone to the areas in question and there had taken the time and performed the labor necessary to an adequate understanding of all the conditions affecting property of the character owned by the corporations whose shares are to be valued. The court will not impose upon this estate the burden of such an inquiry. The things to be appraised are the shares which are here. The appraisal has to be made as best the appraisers can make it from the data here. The appraisal when made will serve only the limited use to which reference has already been made. In the existing conditions in this estate a fair and equitable substitute for an inventory and appraisal can readily be found if the parties in good faith will seek to find it.

The matter will be restored to the calendar for further hearing on the 25th day of March, 1936, at ten-thirty A. M., at which time the court will receive suggestions as to a method for protecting the interests of the administrators without requiring the expenditure involved in an appraisal and inventory.